**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VADZIM YERASHEVICH**,<br><br>*Petitioner*,<br><br>v.<br><br>**MARKWAYNE MULLIN,** *et al.*,<br><br>*Respondents.* | **Case No. 2:26-cv-08389-JDW** |

## MEMORANDUM

Collecting information is not the same as using that information to decide. When officers from U.S. Immigration and Customs Enforcement detained Vadzim Yerashevich, they recorded a lot of information about him (some accurate, some inaccurate). But when it came time to explain their decision to detain Mr. Yerashevich, they didn't cite any of that information. Instead, they just said they detained him pursuant to a Presidential Executive Order that mandates categorical detention. Faced with that record, I can only conclude that the agents decided to detain Mr. Yerashevich based on his status as an alien in removal proceedings, not based on anything else about him. They can't do that, though, so I will grant his petition for a writ of habeas corpus and order his release.

## I. BACKGROUND

### A. Discretionary Detention Under The INA

8 U.S.C. § 1226, entitled "Apprehension and detention of aliens," grants the Attorney General discretion to arrest and detain noncitizens who are in removal

proceedings (except for noncitizens subject to mandatory detention under Section 1226(c)). *See* 8 U.S.C. § 1226(a). This Section further provides that the Government may "continue to detain the arrested" noncitizen or release him on bond or conditional parole. *Id.* § 1226(a)(1)-(2). After immigration officers make an initial custody determination, the noncitizen may request custody redetermination before an immigration judge ("IJ") at a bond hearing. 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Either party may appeal an IJ's decision to the Board of Immigration Appeals. *Id.* § 1236.1(d)(3). To secure his release, a noncitizen must convince the immigration officer charged with his custody decision, or the IJ at a bond hearing, that he poses no flight risk and no danger to the community. *See* 8 C.F.R. §§ 1236.1(c)(8), 1003.19(h)(3); *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019).

Two forms in the record bear on ICE's initial custody decision. The first is a Form I-213, which is the "official record that immigration officials prepare when initially processing a person suspected of being in the United States without lawful permission." *Vera Punin v. Garland*, 108 F.4th 114, 118 (2d Cir. 2024). The second form is a Form I-286, which informs a noncitizen of ICE's decision—*i.e.*, whether to detain or release him and, if he is released, any bond or conditions of release—and informs him of his right to request a custody redetermination hearing before an IJ.

### B. Mr. Yerashevich's Detention

Mr. Yerashevich, a citizen of Belarus, entered the United States on September 30, 2020, as a nonimmigrant B2 Visitor for Pleasure with his wife and two children. That visa

authorized him to stay in the United States until March 29, 2023, but Mr. Yerashevich remained longer. Mr. Yerashevich's wife has a pending asylum application, which includes him as a derivative beneficiary.

On May 3, 2026, ICE's Criminal Alien Program Unit referred Mr. Yerashevich's case to the attention of Philadelphia Enforcement and Removal Operations based on a "positive biometric match."[1] (ECF No. 5-4 at 2.) On July 5, 2026, Lower Merion Township police arrested Mr. Yerashevich for driving under the influence of alcohol. The police released him from local custody before an immigration detainer could be lodged.

ICE prepared a Form I-200 Warrant for Arrest for Mr. Yerashevich on August 21, 2026, followed by a Form I-862 Notice to Appear documenting his immigration violation on October 30. The next day, ICE conducted a targeted enforcement operation at Mr. Yerashevich's address and arrested him nearby. After the arrest, ICE generated a Form I-286, advising Mr. Yerashevich that he would be detained and offering the opportunity to request a bond hearing before an IJ. ICE also generated a Form I-213, which documented Mr. Yerashevich's background, including his immigration status and history, criminal record, health, identifying characteristics like scars and tattoos, and the details concerning

[1] It's not clear what prompted a referral in May from the Criminal Alien Program Unit because Mr. Yerashevich had not been charged with a crime at that point. At the hearing in this case, the Government asserted that the date of the referral that appears in the paperwork—May 3—is an error. But the Government offered no support for that assertion. And, faced with that unsupported assertion on the one hand and a contemporaneous document in the record whose information the Government repeated in its Opposition brief, subject to Rule 11, I credit the evidence in the record.

his arrest on that day. Under "Disposition," the Form I-213 states: "YERASHEVICH is subject to President Donald Trump's Executive Order titled, 'Protecting the American People Against Invasion,' signed on January 20, 2025. YERASHEVICH was served a Notice to Appear ('NTA'). YERASHEVICH will be detained without bond at this time." (ECF No. 5-4 at 4.)

### C. Procedural History

On November 3, 2026, Mr. Yerashevich filed a petition for writ of habeas corpus in this Court while detained at the Federal Detention Center in Philadelphia. The Government opposes the petition. On November 18, 2026, the Parties appeared for oral argument in the case.

## II. LEGAL STANDARD

28 U.S.C. § 2241 grants federal district courts the authority to review the legality of immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The district court may grant a writ of habeas corpus when the petitioner is "in custody under or by color of the authority of the United States … in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. §§ 2241(c)(1), (c)(3). It is the petitioner's burden to show that his detention violates the Constitution or federal law. *See id.* § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III. DISCUSSION

Mr. Yerashevich argues that his detention under Section 1226(a) without an individualized custody determination violates that statute and his Fifth Amendment procedural due process rights. The Government maintains that Mr. Yerashevich needs to exhaust his administrative remedies before filing a habeas petition in federal court. It also argued that Mr. Yerashevich is lawfully detained under Section 1226(a) because removability alone is sufficient to support ICE's discretionary determination to detain, and, in any event, ICE made an individualized determination as to Mr. Yerashevich. I addressed and rejected the first two arguments in *Basboga v. Jamison*, No. 2:26-cv-06694-JDW, 2026 WL 3033623 (E.D. Pa. Oct. 9, 2026), so I briefly summarize that reasoning here before turning to the Government's remaining argument about Mr. Yerashevich's record.

### A. Exhaustion

Because Section 2241 itself does not contain an exhaustion requirement, exhaustion under Section 2241 is prudential rather than mandatory. *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). I am excusing exhaustion here, because requiring Mr. Yerashevich to exhaust his administrative remedies would be futile. See *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988). Mr. Yerashevich challenges ICE's failure to make a lawful initial custody determination, not merely the result of that determination. As I explained in *Basboga,* although an IJ could reconsider his custody status, an IJ cannot

resolve Mr. Yerashevich's claim that his present detention rests on an unlawful initial process. 2026 WL 3033623, at *3.

### B. Section 1226(a) And Due Process

#### 1. Individualized-determination requirement[2]

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General," a noncitizen "may be arrested and detained pending a decision" on whether he is to be removed from the United States. 8 U.S.C. § 1226(a). The discretionary language "may" itself calls for a case-by-case determination. *Basboga*, 2026 WL 3033623, at *5. The INA's implementing regulations specify the content of that determination. The regulations state that "[a]ny officer authorized to issue a warrant of arrest may, in the officer's discretion, release" a qualifying noncitizen if the noncitizen "demonstrate[s] … that such release would not pose a danger to property or persons" and he is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). ICE must therefore exercise its discretion to detain or release under Section 1226(a) by making an individualized determination as to danger to the community and flight risk. *Basboga*, 2026 WL 3033623, at *5 (collecting cases in agreement).

[2] At the hearing in this case, the Government argued that the fact that a noncitizen is in removal proceedings is enough of a basis for an ICE officer to exercise his discretion and detain the noncitizen. After the hearing, the Government indicated in correspondence to my Chambers that it no longer stands by this threshold argument that an individualized custody determination is not statutorily or constitutionally required when a noncitizen is subject to removal. Nonetheless, I briefly explain why I continue to find that argument unavailing.

Due process demands the same. Freedom from detention is at the heart of the liberty that the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. That liberty applies to "all persons" within the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693 (quoting *Plyler v. Doe*, 457 U.S. 202, 210 (1982)). I previously applied the test from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), to conclude that detention without an individualized determination in accordance with Section 1226(a) and its regulations violates the Due Process Clause. *Basboga*, 2026 WL 3033623, at *6. That conclusion holds true. Mr. Yerashevich's interest in freedom from physical confinement is fundamental. Detention without an individualized assessment of dangerousness or flight risk creates a high risk of erroneous deprivation, and requiring that assessment through existing detention procedures imposes little additional administrative burden. *Id.* The Government's interests in public safety and attendance at immigration proceedings remain substantial, but an individualized assessment directly addresses those concerns. *Id.* For these reasons, I conclude that the absence of an individualized custody determination violates both the statutory and regulatory framework and procedural due process.

**2. Mr. Yerashevich's detention**

The record does not establish that ICE made the required individualized determination about Mr. Yerashevich. The Form I-286 records ICE's detention decision with a check mark, but it does not establish that ICE assessed Mr. Yerashevich's

dangerousness or flight risk. It states only that he will remain detained and advises him of the opportunity to request a bond hearing, lacking any details specific to Mr. Yerashevich.

The Form I-213, by contrast, contains details. It includes sections on family information, health status, criminal history, identifying characteristics like scars and tattoos, and Mr. Yerashevich's encounter with ICE. Some of those details are wrong, including Mr. Yerashevich's name (in two instances) and family information. Those errors raise concerns about the care that the officer took in in preparing the record, but they do not, standing alone, establish that ICE failed to make an individualized custody determination. A determination based on inaccurate facts presents a different issue from the one here: whether ICE made the required determination at all.

However, under "Disposition," the I-213 provides only that Mr. Yerashevich is subject to President Trump's Executive Order and was served a Notice To Appear. This reasoning is no more individualized than the disposition that I rejected in *Basboga*, which provided that ICE detained Mr. Basboga "[d]ue to available bed space." 2026 WL 3033623, at *2. Reference to the Executive Order and service of the NTA does not, by itself, explain why Mr. Yerashevich presents a danger to the community or a flight risk. Explaining Mr. Yerashevich's detention only by reference to a general executive directive and his status as removable is a categorical, not individualized, determination. *See Dos Reis v. McShane*, No. CV 26-3775, 2026 WL 1746649, at *4 (E.D. Pa. June 17, 2026).

The Government asks me to consider the I-213 Form holistically to infer that the ICE officer made an individualized determination while considering all its contents, not only those listed under "Disposition." In the Government's view, because the ICE officer recorded details about Mr. Yerashevich throughout the form, I should infer that those details formed the basis for a reasoned custody determination. Specifically, the Government argues that it is fair to infer that the ICE officer considered Mr. Yerashevich's recent DUI arrest, listed in the encounter and criminal history sections of the I-213, and concluded that he presented a danger to the community. The Government further contended at oral argument that Mr. Yerashevich's DUI charge is what drew ICE's attention to him in the first place; thus, it is fair to infer the DUI also factored into the custody determination. There are several problems with the Government's argument.

*First*, the chronology undermines the Government's contention that the DUI arrest in July first brought Mr. Yerashevich to ICE's attention. The record identifies a referral to ICE's Philadelphia Enforcement and Removal Operations on May 3, 2026, approximately two months before the DUI arrest. That sequence does not establish what later drove ICE's detention decision, but it defeats the particular inference the Government asks me to draw from the initial referral.

*Second*, the presence of information in a processing record does not, without more, establish that ICE used that information to make an individualized custody determination. In this case, the officer identified the Executive Order and service of the

NTA in the disposition section but did not connect Mr. Yerashevich's DUI charge—or any other recorded fact—to dangerousness, flight risk, or any other criterion that might justify the exercise of discretion to detain Mr. Yerashevich. The Government identifies no contemporaneous explanation or other evidence showing that the officer made that assessment. *See Torres Guevara v. Warden of Fed. Det. Ctr. Philadelphia*, No. CV 26-7077, 2026 WL 2838542, at *3 (E.D. Pa. Sept. 22, 2026).

Had the ICE officer indicated in the disposition that he considered Mr. Yerashevich's DUI charge in a finding of dangerousness, the record would present a different case. On this, the Parties agree. The Government characterizes the missing explanation as a matter of form over substance. But what is missing is not particular words in a particular box. It is evidence that ICE made **any** individualized assessment before depriving Mr. Yerashevich of his liberty. The impact of requiring officers to show their work is also substantive, not clerical: it permits noncitizens to understand and meaningfully challenge the basis for their detention.

### C. Remedy

Habeas is "above all, an adaptable remedy," with its precise application and scope "depending upon the circumstances." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). "The typical remedy" for an unlawful detention is release. *Id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). The need for release is particularly clear in cases like this because a later immigration court hearing would not adequately remedy the unconstitutional initial

deprivation. *Basboga,* 2026 WL 3033623, at *7. I will therefore order Mr. Yerashevich's immediate release from ICE custody. Should the Government seek to re-detain him under Section 1226(a), it must make the individualized custody determination that the provision requires.

## IV. CONCLUSION

I will grant Mr. Yerashevich's petition on the grounds that he is unlawfully detained under 8 U.S.C. § 1226(a) and order his immediate release. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

November 20, 2026